UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: | CASE NO. |
| **BYRON STEWART** | **17-11031** |
| | SECTION A |
| DEBTOR | CHAPTER 7 |
| | |
| **LOUISIANA CENTRAL CREDIT UNION** | ADVERSARY NO. |
| PLAINTIFF | **17-1052** |
| VERSUS | |
| **BYRON STEWART** | |
| DEFENDANT | |

## MEMORANDUM OPINION ON PARTIAL JUDGMENT

Trial in the above-captioned adversary proceeding came before the Court on December 19, 2017. At the conclusion of the trial, the Court took the matter under advisement.

## I.  Findings of Fact

Byron Stewart ("Stewart") became a member of Louisiana Central Credit Union ("LCCU") in 2006, and his weekly paychecks are directly deposited into an account at LCCU. Since 2006, Stewart has had an outstanding loan with LCCU. The loan was paid weekly through debits against Stewart's wages. After the principal balance was reduced, Stewart would refinance the loan. LCCU used the new loan to pay off the previous balance, plus loan Stewart an additional amount. This was done five (5) times after 2006. Stewart has never been in default on his loans with LCCU.

On February 21, 2017, Stewart went to LCCU seeking to refinance his outstanding loan and hoping to receive a $2,000 advance above the balance. Stewart's loan officer was Cynthia Moore ("Moore"), an employee of LCCU who had assisted Stewart previously. Stewart told Moore that

he was seeking the loan in order to pay down debts due to Luckmore Finance ("Luckmore"); Republic Finance ("Republic"); and Credit Acceptance.[1]

LCCU did not ask Stewart to complete a financial statement but ran Stewart's credit report prior to granting the advance.

After running Stewart's credit report, Moore found that Stewart was past due on the loans to Republic, Luckmore, and Credit Acceptance.[2] Moore determined that LCCU would loan Stewart a total of $2,254.21 at 24% interest.[3] The balance due on Stewart's existing loan was $1,754.21, so after paying off the $1,754.21, Stewart received $500.00.[4] Moore was aware that $500.00 would not bring the Luckmore, Credit Acceptance, or Republic loans current but agreed to the loan because Stewart was a long time customer and she wanted to help him. Stewart used the $500.00 toward his car note, car insurance, and electricity bill.

In April 2017, Republic Finance filed suit against Stewart.[5] Stewart hired counsel and filed a Voluntary Petition for Relief under Chapter 7 of the Bankruptcy Code on April 24, 2017 ("Petition Date").

---

[1] At the hearing, the debt to Credit Acceptance was simply referred to as "the car note."

[2] Stewart's credit report revealed that his debt to Luckmore was in the approximate amount of $1,000.00; Republic in the approximate amount of $4,500.00; and Credit Acceptance in the approximate amount of $15,635.00. According to Moore, each were several months past due.

[3] Exh. 1.

[4] Exh. 2.

[5] The suit is listed on Stewart's Statement of Financial Affairs as *Republic Finance v. Byron Stewart*, Case no. 17-00846, City Court of Slidell. Case. 17-11031, P-1.

Between the inception of the loan on February 2, 2017, and the Petition Date, Stewart made nine (9) weekly payments to LCCU for a total of $373.05 and was current. Stewart listed LCCU in his Schedules of Assets and Liabilities as an unsecured creditor in the amount of $2,263.00.[6]

On July 5, 2017, LCCU filed a Motion Objecting to Discharge in Stewart's main case. Stewart objected, and at the hearing, the Court instructed LCCU that it must file an adversary proceeding pursuant to F.R.B.P. 7001.

On August 22, 2017, LCCU filed the instant Complaint against Stewart for denial of discharge pursuant to 11 U.S.C. § 727(a)(4)(A) and (5) as well as dischargeability of debt pursuant to 11 U.S.C. § 523(a)(2) and (6).

## II. Law and Analysis

### A. Section 727(a)(4) and (5)

LCCU contends Stewart should be denied a discharge pursuant to section 727(a)(4) and (5). Section 727 provides:

> (a) The court shall grant the debtor a discharge, unless- ...
>
> > (4) the debtor knowingly and fraudulently, in or in connection with the case-
> >
> > > (A) made a false oath or account; ...
> >
> > (5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities; ...

Stewart appeared on June 1, 2017, for a section 341 Meeting of Creditors. No representative of LCCU appeared to question Stewart. LCCU did not request authority to examine Stewart under

---

[6] Case 17-11031, P-1. This is a "no asset" case, so LCCU was not required to, and did not, file a proof of claim.

3

F.R.B.P. 2004 nor did it depose Stewart in connection with this adversary. The contents of his Schedule of Assets and Liabilities or Statement of Financial Affairs has not been challenged. LCCU has presented no evidence of Stewart's loss or deficiency of assets much less a failure to explain that condition.

The Court finds that Stewart has not failed to explain any loss or deficiency of assets. Stewart has not misrepresented his assets, debts, or any other statement in connection with this case.

The Court finds that LCCU has not met its burden of proving that Stewart should be denied a discharge pursuant to section 727(a)(4) or (5).

### B. Section 523(a)(2)(A) and (6)

LCCU contends that its claim is nondischargeable pursuant to sections 523(a)(2)(A) and (6). LCCU alleges that at the inception of the loan, Stewart misrepresented his intent to pay.[7]

Section 523 provides:

(a) A discharge under section 727 ... does no discharge an individual debtor from any debt- ...

> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by-
>
> > (A) false pretenses, false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;...
>
> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity; ...

---

[7] The Supreme Court in *Husky Intern. Electronics, Inc. v. Ritz*, 136 S.Ct. 1581, 1589, 194 L.Ed.2d 655 (2016), ruled that for a finding of fraud it is not *required* that the fraud be at the inception of the transaction. However, LCCU has alleged that in this case, the fraud was a representation at the inception of the loan that Stewart had the ability to pay.

A creditor must prove its claim is not subject to discharge by a preponderance of evidence.[8]

The Court must determine whether Stewart has obtained a debt by false pretenses and representations or by committing actual fraud.[9] When fraudulent representation is alleged, the creditor must prove by a preponderance of evidence:

> (1) the debtor made representations; (2) at the time they were made the debtor knew they were false; (3) the debtor made the representations with the intention and purpose to deceive the creditor; (4) that the creditor relied on such representations; and (5) that the creditor sustained losses as a proximate result of the representations.[10]

When LCCU made its most recent advance to Stewart, it was aware that Stewart had outstanding past due debts to Luckmore, Credit Acceptance, and Republic. Stewart advised Moore that he needed $2,000.00 to bring these debts current. From a review of Stewart's credit report, Moore was aware that these debts were three (3) months past due. LCCU also knew that the $500.00 additional loan to Stewart in February 2017 would not be enough to bring the Luckmore, Credit Acceptance, or Republic balances current.

Stewart was not contemplating filing for bankruptcy relief at the inception of the loan in February 2017. Stewart made nine (9) payments on the LCCU loan and was current on the Petition Date. It was not until Republic sued Stewart in April 2017 that Stewart hired counsel.

---

[8] *Husky Intern. Electronics, Inc. v. Ritz*, 136 S.Ct. 1581, 1586, 194 L.Ed.2d 655 (2016) ("Congress did not intend 'actual fraud' to mean the same thing as 'a false representation.'")

[9] *RecoverEdge, L.P. v. Pentecost*, 44 F.3d 1284, 1292 (5th Cir. 1995) (citations omitted).

[10] *Matter of Selenberg*, 856 F.3d 393, 398 (5th Cir. 2017). In *Husky*, the Supreme Court ruled, "The term 'actual fraud' in § 523(a)(2)(A) encompasses forms of fraud, like fraudulent conveyance schemes, that can be effected without a false representation." *Husky*, 136 S.Ct. at 1586. Even though "actual fraud" does not require a misrepresentation, the Supreme Court made clear that reliance is still a requirement for frauds when a misrepresentation is alleged. *Id.* at 1589-90.

LCCU has not shown any misrepresentation, or silence that would constitute a misrepresentation,[11] by Stewart.[12] At the time Stewart made the promise to pay LCCU, he intended to pay them. He in fact did pay LCCU for two (2) months or nine (9) weeks. Then, circumstances changed when Republic filed suit against Stewart. Even so, the LCCU loan was current when Stewart filed for bankruptcy relief.

The Court finds that LCCU has not met its burden of proving that the loan was obtained by false pretenses, false representation, or actual fraud.

LCCU also contends that Stewart's debt to it should be held nondischargeable because it is for "willful and malicious injury" pursuant to section 523(a)(6).

> An injury is "willful and malicious" where there is either an objective substantial certainty of harm or a subjective motive to cause harm.[13]

Section "523(a)(6) covers debts 'for willful and malicious injury,' whether or not that injury is the result of fraud."[14]

Stewart refinanced his LCCU loans in order to obtain additional advances several times between 2006 and 2017. LCCU was assured it would be paid because it was authorized to take its payments from Stewart's account as soon as his paycheck was deposited. In fact, LCCU was paid nine (9) payments, and Stewart had no intent to interrupt this practice until sued by Republic.

---

[11] "When one has a duty to speak, both concealment and silence can constitute fraudulent misrepresentation; an over act is not required." *Selenburg*, 856 F.3d at 399 (citation omitted).

[12] Nor has LCCU shown a fraud without a representation as contemplated in *Husky*.

[13] *Guerra & Moore Ltd., LLP v. Cantu (In re Cantu)*, 389 Fed.Appx. 342, 345 (5th Cir. 2010) (citations omitted).

[14] *Husky*, 136 S.Ct. at 1588 (citation omitted).

Therefore, the Court finds that there is no "objective substantial certainty of harm." Stewart's regular payments show that he had no "subjective motive to cause harm."

The Court finds that LCCU has not met its burden of proving that Stewart's debt to it should be held nondischargeable.

### C. Attorney's Fees and Costs

Stewart contends that he is entitled to damages pursuant to section 523(d). Section 523(d) provides:

> If a creditor requests a determination of dischargeability of a consumer debt under subsection (a)(2) of this section, and such debt is discharged, the court shall grant judgment in favor of the debtor for the costs of, and a reasonable attorney's fee for, the proceeding if the court finds that the position of the creditor was not substantially justified, except that the court shall not award such costs and fees if special circumstances would make the award unjust.

LCCU requested determination of dischargeability pursuant to section 523(a)(2), and the Court ruled that the debt to LCCU is dischargeable. Thus, if the Court finds that LCCU's position was not substantially justified, it must award attorney's fees and costs to Stewart.[15] "Substantially justified" means "justified to a degree that could satisfy a reasonable person."[16]

Mary Schroeder ("Schroeder"), the collections manager at LCCU, made the decision to file the instant adversary proceeding because she believed that loans instituted within ninety (90) days

---

[15] Section 523(d) only allows an award of attorney's fees and costs, and not other damages. 124 Cong. Rec. H11096 (daily ed. Sept. 28, 1978); S17412 (daily ed. Oct. 6, 1978); remarks of Rep. Edwards and Sen. DeConcini.

[16] *Pierce v. Underwood*, 487 U.S. 552, 566, 108 S.Ct. 2541, 1550 (1988). In *Pierce*, the U.S. Supreme Court interpreted "substantially justified" as used in 28 U.S.C. § 2412(d)(1)(B), the attorney fee provision of the Equal Access to Justice Act. S.Rep. No. 98-65 (1983) makes clear that Congress intended to incorporate the same standard into section 523(d). BANKR84-:H 4, 1983 WL 506599 (A&P.L.H.) at 9. *See also* P.C. & Assoc. v. Young (In re Young), 425 B.R. 811, 819 (Bankr.E.D.Tex. 2010).

of the petition date could not be "legally included" or discharged in a bankruptcy. Schroeder's understanding of bankruptcy law is inaccurate, and it was frivolous for LCCU to file suit without researching the law and understanding its burden of proof.

Prior to filing the adversary, LCCU did not attend the section 341 Meeting of Creditors nor did it conduct an examination pursuant to 2004 to determine whether there had been a change in circumstance: here the suit filed by Republic. The majority of the loan in February 2017 was a refinance of existing debt; the new debt was only $500.00. Stewart's intent to repay the loan at the time of its inception is shown by the nine (9) payments he made prior to the Petition Date which totaled $373.05.[17] After paying accruing interest on the new balance, Stewart reduced this new principal balance by $283.73, over half the amount newly advanced.[18] This is hardly a case of "false pretenses, false representation, or actual fraud."

The Court finds that LCCU's position was not substantially justified, and it will award attorney's fees and costs to Stewart. The Court will order Stewart's counsel to submit an affidavit of his fees and costs in a form submitted by date, task involved, and time expended along with an itemization of expenses. LCCU will be allowed to challenge the reasonableness of the affidavit of fees and costs.

---

[17] The weekly payments were $41.45.

[18] This balance is derived after the payments satisfied accrued interest. According to Exh. 1 and 2, the first payment of $41.45 was due, and properly made, on March 3, 2017. Based on an initial balance of $2,254.21, interest of $55.15 accrued in March 2017, against payments of $207.25. In April 2017, interest of $37.26 accrued and was deducted from payments of $165.80.

**III. Conclusion**

Stewart is entitled to a discharge pursuant to section 727, and the claim of LCCU is dischargeable. LCCU's allegations that Stewart's debt to it was nondischargeable under section 523(a)(2) were not substantially justified. The Court will order Stewart's counsel to submit an affidavit of his fees and costs in a form submitted by date, task involved, and time expended along with an itemization of expenses no later than ten (10) days from the date of this Partial Judgment. LCCU may challenge the reasonableness of the affidavit of fees and costs within ten (10) days of the affidavit's entry on the record. If requested, a hearing on the fees and costs will be scheduled by the Court.

New Orleans, Louisiana, February 14, 2018.

Hon. Elizabeth W. Magner
U.S. Bankruptcy Judge